IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WANDA J. ZACHERY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case. No: 2:18-cv-982-RAH-JTA |
| | ) | (WO) |
| COOSA COUNTY BOARD | ) | |
| OF EDUCATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This is an employment discrimination case brought by Plaintiff Wanda J. Zachery ("Zachery"), a third-grade teacher at Central Elementary School ("CES"), a school under the jurisdiction of the Coosa County Board of Education ("the Board"). Zachery claims that she was passed over for a separate teaching position based on her race and religion in violation of 42 U.S.C. §§ 2000e *et seq.* (Title VII); 42 U.S.C. § 1981; and 42 U.S.C. § 1983. The Board and Board Superintendent Andi Wilson ("Wilson") (collectively, "Defendants") have moved for summary judgment as to Zachery's claims. For the reasons discussed below, the Court concludes that the Defendants' summary judgment motion, (Doc. 32), is due to be GRANTED.

## I. STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Rule 56 [ ] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine issue of material fact.  *Id.* at 323.  If the movant meets this threshold, the nonmoving party must "go beyond the pleadings" to establish that there is a "genuine issue for trial."  *Id.* at 324 (citation and internal quotation marks omitted).

On summary judgment, a court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1060 (11th Cir. 1994).  Any factual disputes will thus be resolved in the non-movant's favor, but only when sufficient competent evidence supports the non-moving party's version of the disputed facts.  *Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002).  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)).

A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  The non-movant "must do more than simply show that there is some metaphysical doubt as to the

material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, that party must present "affirmative evidence" of material factual conflicts to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. If the non-movant's response relies on nothing more than conclusory allegations, the court must enter summary judgment for the movant. *See, e.g.*, *Holifield v. Reno*, 115 F.3d 1555, 1565 n.6 (11th Cir. 1997); *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995).

## II. BACKGROUND

Zachery has been employed as a third-grade teacher in the Coosa County education system since August 2005. (Doc. 33-1, pp. 11, 23.) She holds a bachelor's degree, two master's degrees (one in reading specialization and one in elementary education), and an educational specialist ("EdS") degree as well. (*Id.*, p. 22.) At one point, Zachery pursued a doctorate in reading but is not currently enrolled in a doctoral program. (*Id.*, pp. 22-23.)

In her position as a third-grade teacher at CES, Zachery teaches all subjects and performs any extracurricular duties that are assigned. (*Id.*, p. 24.)

On July 27, 2017, the Board promoted Brandi Lee to the assistant principal position at Central High School, another Coosa County school. (Doc. 33-2, p. 38; Doc. 33-6, p. 5.) This promotion left the reading coach position[1] at CES vacant, and when the Board posted

---

[1] The position previously was open in 2014 and filled that year by Brandi Lee, a person less qualified than Zachery according to Zachery. (Doc. 33-1, pp. 74, 76-77, 82-83; Doc. 33-4, pp. 15-19.) Zachery was not considered for the open position despite her informal inquiry. That position opening is not at issue in this case. (Doc. 33-1, pp. 82-83; Doc. 33-4, pp. 15-19.)

notice of the open position on August 1, 2017, Zachery applied. (Doc. 33-2, p. 61; Doc. 33-3, p. 16.)  Zachery was one of fifteen applicants for the position. (Doc. 33-3, p. 72.)

CES Principal Kara Forbus (a white female) interviewed three of the fifteen applicants, all of whom already were employed by the Board, for the position. (Doc. 33-1, p. 48; Doc. 33-3, pp. 13, 17, 72.)  In addition to Zachery (an African American female), she interviewed Callie Knight, a second- grade teacher at CES, and Bethany Forbus (both white females). (Doc. 33-1, pp. 47-50, 58-64; Doc. 33-3, pp. 14, 17; Doc. 33-5, p. 18.) Principal Forbus interviewed Bethany Forbus (unrelated) merely as a professional courtesy, as Bethany did not meet the state qualifications for the position. (Doc. 33-3, pp. 26-27, 72-73.)

As to Callie Knight  (now Callie Causey after a remarriage, *see* Doc. 33-6, p. 5), and Zachery, Principal Forbus had worked with both of them as fellow classroom teachers at CES for ten years and had acted as their supervisor for two years prior to the interviews. (Doc. 33-3, pp. 12, 18-19, 48.)  Principal Forbus interviewed Knight and Zachery on different days using the same list of typed questions. (Doc. 33-1, p. 76; Doc. 33-3, pp. 36-37, 67.)

For her part, Zachery believes that her interview with Principal Forbus did not go well because, according to Zachery, Forbus went off-topic, interrupted her, and told her she could wear jeans to the interview. (Doc. 33-1, pp. 74-75, 100-101.)

Principal Forbus had a different opinion, believing both interviews went well. (Doc. 33-2, p. 40; Doc. 33-3 p. 72.)  In the end, however, Forbus recommended Knight for the position. (Doc. 33-3, pp. 17, 28, 34.)  According to Forbus, she believed Knight had better

4

interpersonal skills and showed a commitment to continued professional growth, both necessary attributes to fill the reading coach position, as it required regular collaboration with teachers and students from different classrooms and grade levels.[2] (Doc. 33-2, pp. 14-15, 88; *see also* Doc. 33-5, p. 9.)  Also, according to Forbus, Knight was considered a leader among teachers on her grade level and had assisted other faculty with technology issues, as Knight held a master's degree in technology as well as master's degrees in elementary education and educational leadership. (Doc. 33-2, p. 88; Doc. 33-3, pp. 18-19, 26; Doc. 33-5, pp. 26-27; Doc. 33-7, p. 4.) Further, Zachery had not led many professional development trainings (with the exception of one writing workshop), whereas Knight had led many of them. (Doc. 33-1, pp. 25, 89-90; Doc. 33-2, p. 88; Doc. 33-3, p. 26; Doc. 33-5, pp. 23-24.)  Forbus also factored in Knight's work ethic, as Knight had worked long hours after school and during the summer preparing for her classes. (Doc. 33-2, p. 88.) In sum, Forbus did not consider Zachery to exhibit the same qualities as Knight. (Doc. 33-2, p. 88; Doc. 33-3, pp. 19-21.)

Andi Wilson, the superintendent of the school system, approved Principal Forbus' recommendation that the Board transfer Knight to the reading coach position. (Doc. 33-6.) According to Wilson, she relied on her independent judgment, informed by her training as

---

[2] During her tenure with the Coosa County system, Zachery was placed on administrative leave once, as a disciplinary measure for making an allegedly terroristic threat against another employee. (Doc. 33-1, pp. 13-17, 24.)  She also was criminally charged with making a terroristic threat against an attorney, (*Id.*, pp. 13-15), although the charges ultimately were dismissed, (*Id.*, pp. 15-17). Zachery was temporarily placed in a mental institution as a result of her behavior.  (*Id.*, pp. 16-17.)  The Defendants do not present any evidence, nor do they argue, that these incidents played any role in the decision to award the position to Knight over Zachery.

a reading coach and years of experience working with both Knight and Zachery, in approving Knight's transfer. (*Id*., pp. 3-4.)  The Board subsequently approved Knight's transfer at its August 24, 2017, meeting. (*Id*., p. 4.)

Zachery filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 4, 2017. (Doc. 1, p. 2.)  She received her notice of right to sue letter on August 24, 2018, and filed the instant action on November 21, 2018. (Doc. 1.)  After the dismissal[3] of several of her claims, (*see* Doc. 38, p. 20), Zachery's remaining claims are as follows:

- Count One: Disparate treatment on the basis of Zachery's race in violation of Title VII for failure to promote, against the Board. (Doc. 1, p. 7.)

- Count Three: Race discrimination by failure to promote/transfer Zachery, in violation of 42 U.S.C. § 1981 "via § 1983," against the Board and Superintendent Wilson in her individual capacity. (*Id*., p. 11.)[4]

## III. ANALYSIS

### A.  Zachery's Religious Discrimination Claims (Counts Two and Seven)

To begin, several aspects of the pending summary judgment motion have been conceded by Zachery. She admits that through discovery, "it became apparent that [her] religion was likely not a factor in her being denied the reading coach position," and thus she "voluntarily concedes that her Title VII and § 1981 religion claims," as well as her Fourteenth Amendment Equal Protection claim, "should be dismissed." (Doc. 38, pp. 15,

---

[3] Zachery's other claims previously were dismissed by this Court. (Doc. 24.)

[4] Zachery's official capacity claims against Superintendent Wilson were dismissed by this Court on August 27, 2019. (*See* Doc. 24.)

20.)  The Defendants' summary judgment motion on Zachery's religious discrimination claims (Counts Two and Seven) is therefore due to be granted.

### B.  Zachery's Race Discrimination Claims (Counts One and Three)

In Counts One and Three, Zachery claims that she was passed over for the reading coach position due to race discrimination because she was more qualified for the job than the person who was awarded the position, Callie Knight.  In their summary judgment motion, the Defendants primarily argue that Zachery's claims fail because she cannot show an adverse employment action or pretext.  (Doc. 33, pp. 15, 22.)  Zachery disputes both assertions.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer...to discriminate against any individual with respect to…terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Title VII and § 1981 "have the same requirements of proof and use the same analytical framework." *Standard v. A.B.E.L. Servs., Inc*., 161 F.3d 1318, 1330 (11th Cir. 1998). Further, "when section 1983 is used as a parallel remedy for violation...of Title VII, the elements of the two causes of action are the same." *Underwood v. Perry County Comm'n,* 431 F.3d 788, 793 (11th Cir. 2005) (internal quotation marks and citations omitted). *See also Hardin v. Stynchcomb,* 691 F.2d 1364, 1369 n.16 (11th Cir. 1982) (citing *Whiting v. Jackson State Univ*., 616 F.2d 116, 121 (5th

Cir. 1980)[5] ("When section 1983 is used as a parallel remedy for violation of section 703 of Title VII the elements of the two causes of action are the same."). Zachery's race discrimination claims have the same analytical framework and therefore the Court will address them in tandem.

### 1. Zachery's Prima Facie Case of Race Discrimination

To establish a prima facie case for race discrimination under Title VII and § 1981, the plaintiff must show that the employer acted with discriminatory intent. *Hill v. MARTA*, 841 F.2d 1533, 1538 (11th Cir. 1988). Since Zachery does not claim there is direct evidence of discriminatory intent, the Court examines whether Zachery has offered circumstantial evidence of race discrimination under the familiar *McDonnell Douglas* burden shifting framework. *Vessels v. Atlanta Indep. Sch. Sys*., 408 F.3d 763, 767 (11th Cir. 2005) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

To establish a prima facie case of discrimination with circumstantial evidence, Zachery must show: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) either she was replaced by a person outside her protected class or a similarly situated employee outside her class was treated more favorably; and (4) she was qualified to perform her job. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). It is undisputed that Zachery is a member of a protected class and that she was

---

[5] The Eleventh Circuit in *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

qualified to perform the job of reading coach in 2017.  Further, it is clear that a white employee, Callie Knight, was given the position that Zachery, a black employee, was denied. Thus, the Court is left with the second factor of Zachery's prima facie burden.

The Defendants argue that Zachery has not shown she was subjected to an adverse employment action because the position change request at issue was not a promotion, nor an involuntary demotion for that matter; instead, it was an intra-school transfer in titles and duties with no change in pay, benefits or prestige. (Doc. 33, p. 15.)  Alternatively, to the extent that the position would have constituted a promotion for Zachery, thus satisfying the adverse employment action element, the Board argues that Zachery cannot show pretext. (*Id.*, pp. 19-23.)

The first question here, as Zachary couches it, is whether the sought-after position entailed such different responsibilities or required such different attributes that being denied a transfer to that position constitutes an adverse employment action regardless of the absence of a change in pay or benefits.  (*See* Doc. 38, pp. 13-14.)

A qualifying adverse employment action in the Title VII context "must in some substantial way alter the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect his or her status as an employee." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). There must be a serious and material change in employment status, "such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Davis v. Town of Lake Park, Florida*, 245 F.3d 1232,

1239 (11th Cir. 2001), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006).

Generally, a purely lateral transfer—a transfer that does not involve a demotion in form or substance—does not rise to the level of an adverse employment action. *See Hinson v. Clinch Cty., Georgia Bd. of Educ*., 231 F.3d 821, 829 (11th Cir. 2000) ("In a Title VII case, a transfer to a different position can be 'adverse' if it involves a reduction in pay, prestige or responsibility."); *Doe v. Dekalb County Sch. Dist*., 145 F.3d 1441, 1449 (11th Cir. 1998) (applying standard in the Americans with Disabilities Act context).   In a similar vein, the denial of a purely lateral transfer generally does not, itself, qualify as an adverse employment action either. *See, e.g., Jefferson v. Sewon Am., Inc*., 891 F.3d 911, 921 (11th Cir. 2018). "[W]hen an employee alleges that she was denied a different job within the same organization, she must establish that 'a reasonable person faced with a choice [between the positions] ... would prefer being transferred to [the new] position.'" *Id.* (citing *Webb-Edwards v. Orange Cty. Sherriff's Office,* 525 F.3d 1013, 1032 (11th Cir. 2008)). "She may do so with evidence of improved wages, benefits, or rank, as well as other serious and material change[s] in the terms, conditions, and privileges of employment, such as the prestige of the position. *Id.* (citations and quotations omitted); *see also Webb–Edwards*, 525 F.3d at 1033 (11th Cir. 2008) (a denial of a lateral transfer may be categorized as an adverse employment action where the denial results "in a serious and material change in the terms, conditions, and privileges of employment.") (analyzing a Title VII retaliation claim).

Courts have further found that trivial benefits which could theoretically be derived from the employee's transfer are not enough to show an adverse action. *See Ogletree v. City of Auburn*, 619 F. Supp. 2d 1152, 1168 (M.D. Ala. 2009) (title change and uniform insignia change alone not enough to show promotion); *Boyd v. Honda Mfg. of Alabama, LLC*, No. 1:08-CV-960-VEH, 2010 WL 6084741, at *9 (N.D. Ala. Dec. 16, 2010) (employee not being reassigned to position that would not have increased pay, but could theoretically have helped employee obtain another position in the future, was not an adverse action); *see also McCann v. Mobile County Personnel Bd*., No. 05-cv-364, 2006 WL 1867486, *18 (S.D. Ala. July 6, 2006) (desire for a different supervisor as basis for transfer not enough to show an adverse employment action); *McGuire v. Miami-Dade County*, 418 F. Supp. 2d 1354, 1361 (S.D. Fla. 2006) (refusal to relocate employee to a quieter location not an adverse employment action).

On the other hand, transfers that impede an employee's professional growth or advancement can constitute an adverse employment action. *Doe*, 145 F.3d at 1454 n.22 (listing missed "employment opportunities" as one factor in determining whether an action was adverse); *see also Swanson v. Civil Air Patrol*, 37 F.Supp.2d 1312, 1327-1328 (M.D. Ala. 1998) ("a term or condition of employment is affected if the adverse action has a demonstrable adverse impact on present or future performance or opportunity"); *Stewart v. Ashcroft*, 211 F.Supp.2d 166, 173 (D.C.A. 2002) (finding that adverse actions include those that affect "the terms, conditions or privileges of her employment or her future employment opportunities."). And by extension, the denial of a transfer that would have advanced the employee's career can as well. *Jefferson*, 891 F.3d at 921 (employee sought

a transfer to a technology position which would have allowed her to develop a career path in information technology, the denial of which was an adverse action); *Alleyne v. Costco Wholesale Corp.*, No. 1:04-CV-747-WSD-ECS, 2005 WL 8154399, at *7 (N.D. Ga. Aug. 5, 2005) (denial of plaintiff's application for supervisory position was an adverse action because it would have provided plaintiff with experience needed for his advancement).

Zachery was indisputably passed over for the reading coach position by an individual who is not a member of Zachery's protected class, Ms. Knight. Still, the reading coach position would not have resulted in a change in pay, benefits, or days of the year that Zachery worked, as least from what the record shows. (*See* Doc. 33-6, p. 2.)  But Zachery argues that the new position was a specialized position, with different job duties, that "would have allowed her to expand her knowledge base and given her a career advantage with better opportunities for future employment."  (Doc. 38, p. 14.)

Zachery's statement taken alone, absent any other evidence demonstrating the reading coach position's alleged superior benefits, make this claim highly suspect from an actionable employment decision standpoint.  But Brandi Lee, the person who previously held the reading coach position, was promoted to an assistant principal position from the reading coach position, (*see* Doc. 33-4, p. 14), which demonstrates some degree of plausibility that the reading coach position can serve as a stepping stone for advancement. Irrespective of whether the position Zachery sought paid better or required fewer working hours or days, the Court will assume, for summary judgment purposes, that Zachery has sufficiently demonstrated that the position could have advanced her career.  The Court

therefore moves on to the next phase of the *McDonnell Douglas* analysis; that is, the Board's proffered reasons for choosing Knight over Zachery.

### 2. Pretext

Assuming that Zachery has adequately shown that the failure to reassign or transfer her to the reading coach position constituted an actionable adverse employment action, the burden shifts to the Board to offer a nondiscriminatory reason for awarding Knight the position over Zachery. The Board believes it has made such a showing, citing Knight's superior teaching and supervisory experience at CES, as well as her demonstrated leadership, ability to help other teachers, and strong interview.

The Court agrees that these are legitimate, nondiscriminatory reasons for hiring Knight over Zachery. Indeed, "[p]ersonal qualities … factor heavily into employment decisions concerning supervisory or professional positions. Traits such as common sense, good judgment, originality, ambition, loyalty, and tact often must be assessed primarily in a subjective fashion, yet they are essential to an individual's success in a supervisory or professional position." *Denney v. City of Albany*, 247 F.3d 1172, 1186 (11th Cir. 2001) (citation and internal quotations omitted) (citing *Chapman v. A.I. Transport,* 229 F.3d 1012, 1033–34 (11th Cir. 2000) (en banc)).

In Zachery's response, she argues not that Knight was unqualified, but that her own qualifications were superior, citing her degrees in specialized reading, her certification as a reading specialist, and her lengthy history in teaching reading, including to struggling

readers.  She also criticizes the Board's focus on Knight's technology expertise since that was not a qualification contained in the posted notice.

From the Court's perspective, this is not a case where an unqualified applicant was chosen over a qualified applicant, but one with two qualified applicants, each with distinctive attributes. True, Zachery appears to possess an educational background better tailored to the reading coach position that was ultimately awarded to someone with less educational credentials.  And if that was the sole inquiry, then Zachery has a legitimate gripe. But differing credentials that still meet a job posting's stated criteria are not enough to demonstrate pretext. *See Springer v. Convergys Customer Mgmt. Grp. Inc.,* 509 F.3d 1344, 1349 (11th Cir. 2007) (plaintiff's possession of college degree insufficient by itself to show employer's proffered reason for promoting other employee, who had enough years of experience to substitute for the job posting's college degree requirement, was pretextual); *Jolivette v. City of Americus, GA*, 786 F. App'x 234, 236 (11th Cir. 2019) (per curiam) (same); *see also Wright v. Duval County Sch. Bd*., 510 F.Supp.2d 941, 947 (M.D. Fla. 2007) (pretext not established by questioning the relative value the school board placed on different types of experience); *cf. Vessels*, 408 F.3d at 772 (criteria for position stated that doctoral degree was desirable and plaintiff held a doctoral degree, while successful candidate did not, which, though not determinative, contributed to plaintiff's showing of pretext).

Instead, Zachery must show that the Board's actual proffered reasons are pretextual. In its pretext evaluation, the Court considers whether the plaintiff has demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the

14

employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs*, 106 F.3d at 1538. The plaintiff must "meet [the proffered] reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman*, 229 F.3d at 1030. "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant's articulated reasons is pretextual, the [defendant] is entitled to summary judgment on the plaintiff's claim." *Id.* at 1024–25.  "A plaintiff must show that the disparities between the successful applicant's and her own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" *Brooks*, 446 F.3d at 1163 (quoting *Cooper v. S. Co.*, 390 F.3d 695, 732 (11th Cir. 2004), *cert. denied*, 546 U.S. 960 (2005) (citation omitted); *see also Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006) (per curiam) (approving this language in *Cooper*)).

Zachery bases her argument that she was more qualified than Knight on her multiple graduate degrees and certifications in reading, whereas Knight's degrees were, according to Zachery, arguably less relevant to the position of reading coach. However, as the Supreme Court stated in *Burdine*, "an employer has discretion to choose among equally qualified candidates, provided the decision is not based on unlawful criteria." 450 U.S. at 259. Though Zachery's educational background is somewhat stronger, making her better credentialed than Knight from this standpoint, an applicant cannot be judged on credentials alone. And here, credentials appear to have not been the primary criteria employed by the Board.

15

For example, the Board points to the reading coach's need to regularly interact and work with others and believed the role would further benefit from Knight's proven leadership and ability to implement technology.  Zachery does not dispute these reasons head on, but instead argues that her better educational credentials outweigh these differences in attributes.

For the Court, these differences are not of such a weight and significance that no reasonable impartial person could have selected Knight and not Zachery—this Court does not sit as a super personnel department second guessing the decisions of employers where no evidence of discrimination is found. *See Chapman*, 229 F.3d at 1030; *Combs*, 106 F.3d at 1543 ("federal courts do not sit to second-guess the business judgment of employers").

Zachery has provided no evidence that Principal Forbus' consideration of Knight's more subjective qualifications, including her leadership skills, is a mask for racial discrimination. "Absent evidence that subjective hiring criteria were used as a mask for discrimination," the fact that an employer based a hiring or promotion decision on subjective criteria will rarely, if ever, prove pretext. *Springer*, 509 F.3d at 1349 (citing *Denney,* 247 F.3d at 1185). While hiring Knight over Zachery was based in part on Principal Forbus' subjective view of whose qualifications were superior for the position, "[a] subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." *Springer*, 509 F.3d at 1349.

Principal Forbus, "in her testimony describing her first-hand experience with the candidates, provided a sufficiently specific factual basis for her opinion" that Knight was

the more qualified candidate for the position. *Springer*, 509 F.3d at 1349–50. "[A] plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason as long as the reason is one that might motivate a reasonable employer." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001) (citation and internal quotation marks omitted).

Insofar as Zachery argues that Forbus' unprofessional handling of her interview serves as pretext, that argument also fails. The fact that Forbus may have "employed an erratic interviewing and scoring process…might demonstrate that [the employer's] selection process was unwise," but that alone is not evidence that Forbus' alleged demeanor demonstrates pretext. *Conner v. Lafarge N. Am., Inc*., 343 F. App'x 537, 542–43 (11th Cir. 2009). Furthermore, the Board has offered objective criteria justifying the hiring decision, which Zachery has in no way rebutted apart from her quibbling with Knight's educational credentials. *See Norrell v. Waste Away Grp., Inc.*, 246 F. Supp. 2d 1213, 1227 n.19 (M.D. Ala. 2003) ("At best, Norrell's arguments over her qualifications as compared to White is simply her quarrel with Waste Away over the wisdom of its business decision.").

Zachery also makes vague reference to differential treatment between herself and other Board employees in general, complaining about the quality of students she had to teach, development opportunities she was denied, and a single instance of differential dress code enforcement prior to her interview. But again, it is axiomatic that Title VII "is not designed to make federal courts sit as a super-personnel department," *Davis*, 245 F.3d at 1244, and yet Zachery's vaguely alleged workplace gripes ask the Court to do just that.

In short, Zachery has not provided sufficient evidence to conclude, for summary judgment purposes, that the Board's asserted justification is false or otherwise pretextual, *see Reeves v. Sanderson Plumbing Prod., Inc*., 530 U.S. 133, 148 (2000), and therefore, the Court concludes that Zachery cannot satisfy her burden of proving that the Board's proffered reasons for not transferring or promoting her to the reading coach position were pretext for discrimination.

### 3. Convincing Mosaic

In her summary judgment response, Zachery provides a quick discussion of the convincing mosaic analysis, and so the Court will too.

The Court briefly notes that establishing the elements of the *McDonnell Douglas* framework "is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Smith v. Lockheed-Martin Corp*., 644 F.3d 1321, 1328 (11th Cir. 2011). Rather, the plaintiff will survive summary judgment if she presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent. *Id*. A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a "convincing mosaic" of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker. *Id*. A "convincing mosaic" may be shown by evidence that demonstrates, among other things, (1) "suspicious timing, ambiguous statements ..., and other bits and pieces from which an inference of discriminatory intent might be drawn," (2) systematically better treatment of similarly situated employees, and (3) that the employer's

justification is pretextual. *Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1185 (11th Cir. 2019) (quoting *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 733-734 (7th Cir. 2011), *overruled by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016) (footnote omitted)).

Zachery claims she has met this burden because she was passed over for the job despite being better qualified, that the Board disproportionately employs more white teachers than African American teachers, and based on her awareness of a circumstance where an African American teacher was punished more harshly for an incident than a white teacher.  Zachery offers no other evidence, not even a single discriminatory statement directed toward her.

The Eleventh Circuit has rejected similarly flimsy evidence of discrimination under the convincing mosaic analysis. *See Connelly v. Metro. Atlanta Rapid Transit Auth.*, 764 F.3d 1358, 1364–65 (11th Cir. 2014) (only evidence plaintiff presented that was "even remotely race-related" were three incidents in which supervisor called herself "a mean black b---h" and testimony that supervisor socialized with other black employees, insufficient to show convincing mosaic); *Moultrie v. Georgia Dep't of Corr.*, 703 F.App'x 900, 907 (11th Cir. 2017) (plaintiff's generalized and nonspecific complaints that white employees received better treatment were insufficient to show convincing mosaic); *see also Wood v. Bailey-Harris Const. Co.,* No. 2:11-CV-136-WHA, 2012 WL 3069949, at *5 (M.D. Ala. July 27, 2012) ("to the extent that *Smith* stands for an alternative means of defeating summary judgment in a Title VII case, it is easily distinguishable from the present

case in light of the weight and volume of the evidence before the *Smith* court and dearth of evidence before this court").

Zachery's evidence fails to display any sort of convincing mosaic of discrimination, and thus she has failed to demonstrate that the Board discriminated against her in violation of Title VII. The Board is therefore due summary judgment as to Counts One and Three of Zachery's complaint when analyzed under the convincing mosaic framework.

### C.  Claims against Superintendent Wilson in Her Individual Capacity

As to the claims brought against Superintendent Wilson, the Court must point out at the outset that individual capacity suits under Title VII are inappropriate. *Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1504 (11th Cir. 1995); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991). "The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act." *Busby*, 931 F.2d at 772 (citing *Clanton v. Orleans Parish School Bd.*, 649 F.2d 1084, 1099 & n.19 (5th Cir. 1981)). "[T]he proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly." *Id.* Still, Zachery gets her individual capacity claim through the door by formalistically pleading an additional count alleging a violation of § 1981 via § 1983 against Superintendent Wilson, and so the Court must examine whether any daylight exists between Zachery's Title VII claim and this one.

"Unlike a Title VII claim, a § 1981 claim may be brought against an individual supervisor." *Page v. Winn-Dixie Montgomery, Inc*., 702 F. Supp. 2d 1334, 1355 (S.D. Ala. 2010) (citing *Shotz v. City of Plantation, Fla*., 344 F.3d 1161, 1176 (11th Cir. 2003) (noting that § 1981 "provide[s] for individual liability")); *Moss v. W & A Cleaners*, 111 F. Supp. 2d 1181, 1187 (M.D. Ala. 2000) ("Contrary to Title VII, individual employees can be held liable for discrimination under § 1981.") (citation and internal quotation marks omitted)). Crucially however, a claim for individual liability under § 1981 "requires an affirmative showing linking the individual defendant with the discriminatory action." *Id.* at 1355-1356 (citing *Schanfield v. Sojitz Corp. of America*, 663 F. Supp. 2d 305, 344 (S.D.N.Y. 2009) (for personal liability to attach under § 1981, "[i]t must be shown that the defendant has personal involvement in the allegedly discriminatory conduct"); *Wallace v. DM Customs, Inc*., No. 8:05-CV-115-T-23TBM, 2006 WL 2882715, at *7 (M.D. Fla. Oct. 6, 2006) ("To establish a claim for individual liability under § 1981, a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action [and] ... [t]he claim must be predicated on the actor's personal involvement.").

Here, as the Court already has found, Zachery has failed to offer sufficient evidence to create a triable issue as to whether she was subjected to racially discriminatory treatment; therefore, her § 1981 race discrimination claims against Wilson fail for the same reasons that her claims against the Board fail. *See Page*, 702 F. Supp. 2d at 1356; *see also Dixon v. Nat'l Sec. of Alabama, Inc*., No. 2:18-CV-00013-RAH, 2020 WL 2312816, at *4 (M.D. Ala. May 8, 2020) (When Title VII and § 1981 claims are based only on circumstantial evidence, such claims' elements are "identical," and they "either fall[] or surviv[e]

21

together.") (citing *Hilliary v. FlightSafety Int'l, Inc*., 778 F. App'x 835, 839 (11th Cir. 2019); *Allen v. S. Communs. Servs*., 963 F. Supp. 2d 1242, 1250, 1250-53 (N.D. Ala. 2013)).

Therefore, Superintendent Wilson is due summary judgment on Counts One and Three of Zachery's Complaint.

## IV. CONCLUSION

For the foregoing reasons,

it is ORDERED that the Defendants' summary judgment motion (Doc. 32) be and is hereby GRANTED and Counts One, Two, Three and Seven are due to be DISMISSED with prejudice.   A separate judgment will issue.

DONE and ORDERED this 2nd day of February, 2021.

_____ /s/ R. Austin Huffaker, Jr._____
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE